MARGARET JENNINGS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 14, 1928.— May 26, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence,* Street railway, Violation of ordinance.    *Evidence,* Competency.

At the trial of an action of tort against a street railway company to recover for personal injuries sustained by the plaintiff, a girl nine years of age, when she was struck by a street car of the defendant, there was evidence that the car stopped at the top of a hill and then started again; that when it had moved down the hill about a hundred yards the motorman saw the plaintiff and another girl on the left hand sidewalk about one hundred fifty yards away; that he saw them start to run across the road toward the tracks, the nearer rail of which was about twenty-two feet from the sidewalk; that he immediately pulled the reverse and applied the brake; that the car stopped probably within six or seven feet; and that the plaintiff was about in the middle of the track when she was struck by the car. There also was evidence that the car was coasting, and had been running about ten or twelve miles an hour; that the gong was not rung; and that the girls could have been seen from a distance of four hundred fifty feet. *Held,* that a finding was not warranted that the motorman was negligent.

At the trial of the action above described, the plaintiff testified that she had noticed before the accident how cars were operated in that vicinity when children were on the sidewalk or crossing the street. A question, "What have you noticed . . . ?" was excluded. *Held,* that the question properly was excluded.

The plaintiff introduced in evidence at the trial of the action above described ordinances of the city in which the accident occurred, substantially to the effect that, in going down a descent or grade, the speed of a street car must be so reduced as to test the working of the brakes; that

persons in control of a street car should keep a vigilant watch for vehicles and persons, especially children, and should give warning by striking a bell upon approaching any vehicle or person; and that persons in control of a street car should stop the car as soon as possible upon the appearance of danger to a vehicle or person. *Held*, that the motorman of the car could not have been found negligent because of a violation by him of such ordinances, since they were not applicable in the circumstances. There was evidence at the trial of the action above described that, after the accident, the plaintiff was found lying wedged in between the front wheel of the car and the wooden guard in front of the wheel; that, although the motorman knew there was a lifting jack in the car, he did not use it, but backed the car slowly a short distance, whereby the guard "caught" the plaintiff and turned her over, after which she was pulled out from beneath the car. *Held*, that a finding that the employees of the defendant were negligent in the method of removing the plaintiff from beneath the car was not warranted.

TORT. Writ dated November 6, 1924.

In the Superior Court, the action was tried before *Raymond*, J. There was evidence that, after the accident, the plaintiff was found lying wedged in between the front wheel of the car and the wooden guard in front of the wheel; that, although the motorman knew there was a lifting jack in the car, he did not use it, but backed the car slowly a short distance, whereby the guard "caught" the plaintiff and turned her over, after which she was pulled out from beneath the car; and that the plaintiff sustained injuries to her head and shoulder. Other material evidence is described in the opinion.

At the close of the plaintiff's evidence, the defendant, without resting, moved that a verdict be ordered in its favor. The judge refused to pass on the motion at that time, but after the opening to the jury by the defendant's counsel and while the defendant's first witness was on the stand, allowed the motion and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*D. J. Triggs*, for the plaintiff.

*C. F. Choate, 3d*, (*S. H. Babcock* with him,) for the defendant.

PIERCE, J. This is an action of tort to recover damages for personal injuries, sustained by the plaintiff as the result of being struck by an electric car of the defendant near St.

Gregory's Church, and almost opposite a house numbered 2157 Dorchester Avenue, Boston, at about 11:45 A.M. on September 26, 1924. At this point Dorchester Avenue is forty feet wide and runs approximately north and south. There are two tracks laid in the middle of the street, the easterly track used by cars going toward Boston, and the westerly track by cars going south toward Milton. In front of No. 2145 Dorchester Avenue there are two stopping poles, one on either side of the street. The distance from the curbstone of the westerly sidewalk to the nearer rail of the inbound track is about twenty-two feet three inches. The distance from No. 2157 Dorchester Avenue to a point opposite St. Gregory's Church is six hundred and eighty feet. The street running south is up grade for about four hundred feet from No. 2157 toward St. Gregory's Church, "that is, it rises 2½ feet in 100 feet."

The plaintiff and Elizabeth Thompson, aged nine and eight years respectively, immediately before the accident walked north on the westerly sidewalk of Dorchester Avenue until they reached a point a short distance south of a house numbered 2145. Here, as they were going along, the plaintiff saw a dog and "became a little frightened" when the dog came out barking from the house or alleyway near the house. She did not want to pass the dog and she and Elizabeth went across the street. Before she left the sidewalk she looked toward Boston. She did not look toward Milton but, as she testified, "as she went across she had her eyes open . . . thinking that 'if a car came down the hill and the conductor saw me, that he would stop his car and ring his bell.'" She testified that "the motorman didn't ring his gong before she was struck; that when she first saw the car she was right close to it, right in front of it, in the middle of the car track"; that "she walked fast across the street"; and that she had lived in the section where the accident occurred about three years, during all of which time she has attended St. Gregory's School. The uncontradicted testimony of Elizabeth was, in substance, that when she first saw the car she was on the second rail of the outbound track and at that time the plaintiff was between the inbound and outbound tracks; that "the

car was about as far from her as the first rail of the jury box is from the witness stand or about four or five feet"; that "the plaintiff ran across the street" ahead; that the witness "ran faster than the plaintiff" and tried as hard as she could to catch her because she saw that the car was coming; that she reached out to grab her, put her hand on the plaintiff's coat, but "she slipped away," kept on going and "was about in the middle of the inbound track when the car hit her." The car stopped almost instantly, and while the body of the plaintiff was partly under the car and partly under the guard rail and the front left wheel was resting against, but was not upon, her right side.   She was unconscious.

It was in evidence that the car in question started at the car barn, which is about four hundred yards south from the place of the accident, travelled north on the inbound track, and stopped at the top of the hill just opposite the church; that as it again started the motorman saw four or five medium sized girls between twelve and fourteen years of age on the sidewalk below the church and four or five big children near St. Gregory's Church going toward Milton; that when the car had moved down the hill about one hundred yards the motorman saw the plaintiff and her companion on the left hand sidewalk about one hundred and fifty yards away; that he saw them start to run across the road and at that instant he pulled the reverse and threw on his air brake immediately; and that "the car stopped probably six feet or seven feet away from where he started to crank it."   There was further evidence that the car was coasting; that it had been running about ten or twelve miles an hour; and contradictory evidence as to whether the gong was or was not rung.   There was evidence that the plaintiff and her companion could have been seen from a distance of four hundred and fifty feet.

The plaintiff introduced in evidence the following ordinances of the city of Boston: "Section 68.   In taking any slope, descent or grade the speed of the car must be so reduced as to test the working of the brakes. . . . Section 73. No person having control of the speed of a street railway car passing in a street shall fail to keep a vigilant watch for all teams, carriages and persons, especially children, nor shall

such person fail to strike a bell several times in quick succession in approaching any team, carriage or person and no person shall after such striking of a bell delay or hinder the passage of a car. Section 74. No person having control of the speed of a street railway car passing in the street shall on appearance of danger to any team, carriage or person or on the appearance of any obstruction to his car fail to stop the car in the shortest time and space possible."

The plaintiff was asked: "Well, now as you have gone to and fro from your home to the school have you noticed about cars, had you noticed before the accident how cars were operated in front of the school when children were on the sidewalk or crossing the street?" Upon the witness answering "Yes" she was asked, "What have you noticed Margaret?" The answer to the question was excepted to, excluded, and an exception saved by the plaintiff. In this ruling there was no error. The answer would or might open collateral issues as to what was done or not done in any instance observed by her and might unduly prolong the trial.

At the close of the evidence the judge at the request of the defendant directed a verdict in its favor, and the jury returned a verdict for the defendant as directed. We are of opinion the exception of the plaintiff saved thereto must be overruled. The evidence would not warrant the jury in finding, as the plaintiff contends, that the defendant was negligent (1) "In operating the car at an excessive rate of speed"; (2) "In giving no warning or signal of its approach"; (3) "In not slowing down or stopping the car"; (4) "In not seeing the plaintiff soon enough to stop his car and avoid injuring her"; and (5) "In running into her although his view was unobstructed, and although he saw her or could have seen her starting to cross the street 450 feet away." Nor do we think the defendant warrantably could have been found negligent because the car was driven in violation of any of the quoted ordinances. The undisputed facts, which need not be repeated, make it plain that the provisions of the ordinances are not applicable in the circumstances here disclosed. Nor could the jury warrantably have found the defendant negligent because it might have used some other

method than was used to remove the plaintiff from beneath the car.

We do not mean to intimate that the plaintiff was in the exercise of due care when injured, nor that considering her age and the statute that question was not for the jury.

*Exceptions overruled.*